Okay. Good morning everyone. The first argued case this morning is No. 17-2490, BrinnetX Inc. v. Apple, Inc. Mr. Timofeyev. Thank you, Judge Newman. Your Honor, and may it please the Court. In our opening brief, we argued that the patent board below erred in its printed publication finding. As we acknowledged in our Rule 20HA response, another panel of this Court, with Judge Newman presiding, subsequently affirmed a similar decision by a board in the Rule 36 decision. Although Rule 36's decision is non-precedential, we candidly acknowledge that this panel is likely to reach the same conclusion. Well, it does have collateral estoppel effect, does it not? Your Honor, this Court made clear in the Phil case, I believe in Your Honor's opinion, that collateral estoppel only applies if there is no question which issue was decided. If there were two issues which were decided below and neither one could be basis for affirming the decision below, then collateral estoppel does not apply. So wasn't it necessary to the judgment in the Rule 36 that RFC 2401 is a printed publication? Your Honor, we do not believe it was necessary because we also advance alternative arguments which went to substantive patentability issues. But secondly, in the Rule 36 decision, as this Court made clear, this Court can affirm on any basis present. So you're saying there could have been a way for the panel in the Rule 36 judgment to have affirmed the board without reaching the question of whether RFC 2401 is a printed publication? Your Honor, in the Rule 36 decision the— I just need to get a yes or no out of that. Because right now I don't see how our Court could have affirmed without first concluding that RFC 2401 was in fact—there were substantial evidence to conclude that that was a printed publication. So am I right or am I wrong? And if I'm wrong, why am I wrong? Your Honor, we believe in the Rule 36 decision— Am I right or am I wrong? And if I'm wrong, why am I wrong? Your Honor, I don't—I certainly don't want to say that you are wrong. But I think that our position is in the Rule 36 decision, affirmance can be based on anything based on the record. So that's why I'm asking you a question. I mean, I understand the theory of collateral estoppel. I'm trying to understand the facts of that prior panel decision. What happened there? The validity of the conclusion depended upon that prior arc, right? Your Honor, we believe the conclusion did depend on the fact that there was a prior arc that the Court concluded was not—that the Court concluded anticipated or rendered obvious the claimed invention. Right. And if that wasn't prior arc, then how would you have an anticipation finding that could be affirmed? Your Honor, I think the Court—I think, again, our position is that in the Rule 36 judgment, we don't know what was the basis of the Court's decision. Your Honor, what happened to—I mean, if we affirm an anticipation and obviousness findings, and those findings could only be based on the fact that there was prior arc that would do either one of those, then how could that prior arc and the fact that it was prior arc not be central to that lower decision? Your Honor, again, I think our position is that in the Rule 36 decision, there is no— We can't just make something up in a Rule 36. I mean, I explained that in Phil Insel, and the Court explained that in Phil Insel, that if there's no way to get to X without finding Y, then there's collateral estoppel. Your Honor, the Court could have also been persuaded by the unpatentability arguments that in any event, even if it—that in any event, there was in fact, you know, those inventions anticipated. So help me. Was there an alternative theory that was being debated in that case that could have led to a Rule 36 affirmance that did not require concluding that RFC 20401 is a printed publication? Was there? Your Honor, there were additional arguments. I think I— What were those additional arguments? I would acknowledge, though, the printed publication was a threshold issue in that case. Okay. So it's a threshold issue. It was— Then it was necessarily decided. Your Honor, we again—I think our position is in a Rule 36 decision, because the Court can affirm on any basis in the record, we don't know what exactly the Court decided. What would have been that other basis in the record in that case? Again— Because I don't know of one. What was it? I think based on the fact that the Court affirmed without opinion, we don't know which argument the Court— What were the alternative arguments? Tell us what your alternative argument that could have resulted in an invalidity finding without this prior article? Your Honor, I would acknowledge that the finding that the RFC 2401 was a printed publication was indeed the threshold issue. So I think under that analysis, the Court would have addressed that question. But we don't know which specific arguments the Court accepted with respect to that. So therefore, we did find that RFC 2401 was a printed publication. It was a threshold issue in your words. Yes? Your Honor, I think it was a threshold issue, yes. Okay. Then the collateral estoppel applies, doesn't it? Your Honor— Because that was actually litigated. You were there. It's a final judgment. So that's it. On RFC 2401, threshold question, whether it was a printed publication. Your Honor, I do believe it was a threshold issue. So it would—I don't want to acknowledge that collateral estoppel applies from that, again, because our view is in a Rule 36 decision, it's impossible to tell what was the precise basis of the Court's opinion. We appreciate that there are problems with Rule 36. The rules are that it is straightforward and there was no basis of departing from the decision of the district court. So let's, in the remainder of your time, tell us your theory of why that is not a publication. Why it is not a printed publication? Is that what you're trying to tell us? Your Honor, we actually—we have the argument why it's not a printed publication. We specified it in our brief. We actually prepared on that question to rest on our briefs unless there are questions from the Court. So why are we here, then? Your Honor, we're here because we also have, as we said, a constitutional argument that we do wish to maintain and maintain that the argument required us to pursue the appeal. So what precisely is your constitutional argument and where in your briefing does it appear? Our constitutional argument is that it would be impermissibly retroactive to invalidate the patent for the IPR procedures if the—if we—if actually the application for that patent was filed prior to the entry into force of the American Vents Act. All right. And where does that show up in your brief? In our opening brief, we raised the general constitutional argument— The oil states argument. —on the oil states, and we believe that our argument is a subset of that broader argument, which is a challenge to the constitutionality of the IPR procedures. Can you show me which sentence in your brief? Because there's only three or four sentences in your brief, and it's all about oil states. It's all about if oil—if the Supreme Court reverses oil states, then you want to preserve for purposes of this case the right to also be released from this AIA proceeding. It doesn't say anything about retroactive application at all. Point me to a sentence in here. Your Honor— That tells me that—why I shouldn't believe that you're being dishonest in your response to the 20HA letter from the other side. Your Honor, I don't think we were dishonest at all, because our position— I'm sorry. What sentence should I be reading in here? Your Honor, the general—it's that section where we preserve each— Yeah. Yeah. Go ahead and—I mean, I could read it out loud, or I could have you read it out loud, but I don't see anything in here about retroactive application of the AIA to your pre-AIA path. Your Honor, we think that the—under the Supreme Court's logic in oil states, the retroactive application is a subset of broader constitutionality challenge to the IPL procedures. I don't understand. Where did you make the argument? Your argument is solely about oil states and whatever was argued in oil states. And we—our position is the court in oil states said we—they rejected the general constitutionality challenge, but they said they now decided whether it's constitutional to apply— Right, because they said that oil states didn't make that argument. The very header of your section says we should await the Supreme Court's decision in oil states. I mean, you rely specifically on the oil states' arguments. To the extent that oil states waived the retroactivity argument, why doesn't that mean that you waived it as well? Yeah, and we don't think there was a waiver. I understand if the court reaches a different conclusion. We also think this court, as it said, has discretion to consider— You don't believe you waived it because why? We believe because we phrased a general—we made the general constitutional— Where did you make the so-called general where anything and everything that's in the constitution is in play in your case? I don't see that in your case. Your Honor, I may have been imprecise. We made a general challenge to the constitutionality of IPR procedures under Article III and the Seventh Amendment, and we believe the more narrow constitutional problem the Supreme Court identified in oil states is a subset of that broader challenge. Well, we suppose, since the brief was written before the oil states' decision, it's not impossible, of course, that the Supreme Court, if they had decided to go the other way in oil states, they might have continued to draw this distinction. But as it is, it's a difficult issue. Is there anything else you need to tell us? No, Your Honor. We also—we raised other claim constructions and other issues related to Aventail, but we're prepared to rest on our brief. Okay. Well, then let's hear from the other side. Thank you. Mr. Arquin. Thank you, Judge Newman, and may it please the Court, John Arquin, on behalf of Apple. Just coming back to the first set of questions the Court was asking, there's no question that the issue of whether RFC 2401 was a printed publication was the threshold issue as to all seven of the IPRs that were at issue in the prior proceedings. Why didn't you argue collateral estoppel, then, in your letter? Judge O'Malley, in our letter, we were simply trying to respectfully bring to this Court's attention the fact that there had been an intervening development from this Court and identifying the fact that this Court had decided that issue. Obviously, under this Court's internal operating procedures, a Rule 36 decision can have collateral estoppel effect. If the Court thinks it's necessary for us to brief that, we're happy to, but I think that it's been conceded, and I think it's beyond dispute, that this was a necessary issue to the prior decision. In fact, three of the IPR proceedings involving three of the prior patents, the 009, the 341, and the 131 patent, the only issue that was appealed in that prior appeal was whether or not RFC 2401 was a prior printed publication. So can you tell us that there was no alternative theory that wouldn't have depended on that prior act? Correct. So the prior Rule 36 decision affirmed us to all seven IPR proceedings upholding the invalidation of five patents, and for three of those patents, the one and only argument that was made in the prior proceeding that this Court decided in March was whether or not RFC 2401 was a prior printed publication. With respect to the second issue that was raised at argument today, obviously any arguments about retroactivity have been waived. There's not any suggestion of them in any of the briefing. Indeed, the brief refers specifically to the arguments that were at issue in oil states, namely whether or not the Seventh Amendment applies and whether or not there's an Article III issue. And indeed, in their reply brief at page 26, they had said that this Court's binding precedent foreclosed the argument. Of course, this Court didn't have binding precedent on the issue of retroactivity. If the Court has further questions on any of these issues, I'm happy to address them, but for the reasons stated in our brief and that I've articulated today, we respectfully submit the decision should be affirmed. Let me ask you a question that's troubling me that is peripheral to what we're saying. Sure. If, in fact, we thought that there was a constitutional issue which has come to the surface now that the major issue in oil states has been resolved, isn't there an obligation on all of us to assure that the Constitution is not violated? So, Judge Newman, I think that it's very well established in this Court, in the Supreme Court, and in most every other Court that even constitutional arguments, of course, can be waived, and to the extent that they are now attempting to assert a retroactivity argument, that's certainly not something that has previously been presented. This Court has been consistently clear in cases like Smith-Klein v. Apateks and Aventis v. Hospira, 675 F.3rd at 1332, that if an argument is not presented in an appellant's brief, it's waived, and that's true with respect to constitutional arguments as well in cases like Tronzo v. Biomet from this Court and Haley v. West Penn, a Third Circuit decision, 842 F.3rd at 230, says, quote, because the constitutional claim was not presented in appellant's opening brief, it's waived, and there it had to do with issues relating to due process as well, if I recall correctly. And so, Judge Newman, there was certainly nothing about the oil state's decision that has given them some intervening right or intervening argument that they didn't have at the time that they filed their opening brief. This Court's decision in MCM v. HP certainly didn't address any type of retroactivity argument, and so it wasn't foreclosed by precedent. And oil states is very clear that it was not addressing, and it certainly wasn't creating or acknowledging the existence of some argument that didn't previously exist. The Court was just simply being precise in saying what they weren't addressing because there were some things that had been talked about during oral argument in that case that were not part of the decision. There were several amicus briefs who raised the Seventh Amendment issue as well, which means that that's why the Supreme Court felt the need to say we're not reaching it. I think that's exactly right, Judge O'Malley. So it was out there in the public domain at the time these briefs were filed. I think that's right. The Supreme Court was simply acknowledging that in deciding the specific issues that it had before it, it wasn't foreclosing other challenges that had not been before it, but was very clear that this wasn't something that oil states had raised. And again, it wasn't something that this Court had decided previously. So this is an argument that was available to Vernetic should it have wished to pursue it. Now, ultimately, I think at the end of the day, it's... Do we have any case law or discussion or briefing in this appeal as to when is it constitutionally permissible to retroactively apply a new act of Congress? None whatsoever, Judge Chen.  after oil states came out requesting that supplemental briefing be heard on the question of retroactive application of the AIA. No, Judge Chen. This issue is not presented in this appeal, and it would not be... So we have nothing here until now at this oral argument. That's absolutely right, Judge Chen. And so I respectfully submit that's an issue that Vernetic has waived and would not be appropriately addressed by this Court in this case. If the Court has further questions on this issue or any of the other issues, I'm happy to address them. Anything else for Mr. McQuid? Okay. Thank you, Judge Niemann. Okay, Mr. Tanoffia. Unless there are questions from the panel. So what's the best sentence in your brief that tells me that I should know that you brought up a challenge to the AIA and the retroactive application of the AIA to your patent? What's the best sentence I should read? Your Honor, I think it's a sentence that refers to the constitutionality question. Which sentence is that? It is in our brief that refers to the pending oil states case. We believe it's the first sentence of the... Page 54? It is on page 54. The Supreme Court is currently considering the question of whether the Board's IPR process violates the constitution by establishing private property rights through a non-Article III forum without a jury. And the following sentence where we specify that if the Supreme Court decides that the Seventh Amendment Article III preclude the Board from invalidating patents, then the Court should set aside the Board's IPR decision. Did the Supreme Court decide that the Seventh Amendment Article III preclude the Board from invalidating patents through the IPR? The Court said that the Seventh Amendment Article III... Did it decide that? It decided that, but it left open the question whether it's constitutional to apply them in specific circumstances, and we believe that that's a substantive question. And you didn't raise that in your brief here on page 54? We didn't specifically brief it because we believe that pending the Supreme Court's decision, it was premature to brief those issues. The Court's precedent at the time foreclosed any kind of such challenge. What, on retroactive application? In general, because the Court's precedent at the time foreclosed, in general, upheld the constitutionality of the IPR procedures, we believe, in all circumstances. Under Article III, we did not address that retroactivity issue, did we? Well, we believe that the Court's precedent in general foreclosed them in that argument at the time. Okay. So therefore, we did not brief it.  Thank you, Bill. Thank you, Your Honor.